## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANEUDYS ANDRES QUEZADA,

          Petitioner,

v.

      Case No. 22-cv-10569

GARY MINIARD, WARDEN,[1]

      Respondent.

_____/

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL (ECF NO. 3), DENYING RESPONDENT'S MOTION TO EXTEND TIME (ECF NO. 6), AND DISMISSING PETITION

Petitioner Aneudys Andres Quezada, a state prisoner currently confined at the Central Michigan Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Quezada challenges his jury-trial convictions for two counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(2)(b) (sexual contact with a victim less than 13 years of age by a defendant 17 years of age or older); and the ten-to-fifteen-year concurrent terms of imprisonment he received for each count. Also before the Court are Petitioner's motion for appointment of counsel (ECF No. 3) and Respondent's

---

[1] The caption is amended to reflect the proper respondent in this case, the warden of the prison where Petitioner is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. foll. § 2254.

motion to extend time. (ECF No. 6.) For the reasons stated below, the Petition will be dismissed, and the motions denied.

## I. Background

Petitioner's convictions followed a jury trial in the Kent County Circuit Court. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals:

> Defendant's convictions were based on allegations that he sexually touched his niece, AG, and her cousin, JV. Defendant is AG's paternal uncle. Defendant began living with his brother's family in 2011 and moved out of the home when he and his sister-in-law (AG's mother) began having an affair. Defendant fathered a child with AG's mother in 2014. The evidence was that defendant regularly visited the home. During the visits, defendant would spend time with AG, AG's sister and JV, who came to the home after school. AG testified that defendant was nice to her and that she trusted him. She said that defendant would take her and the other children to Dollar Tree or McDonald's and buy them things. Testifying in 2018, AG and JV estimated that the abuse took place in 2016. AG and JV testified that defendant played "games" with them in an upstairs bedroom. AG explained that defendant played a game called "tickles," which at first involved "normal" tickling. But AG said that over time defendant began placing a blanket over her and tickling her "private parts" underneath her clothing. JV also testified that defendant touched her private parts after he covered her with a blanket. AG explained that sometimes defendant would touch her when they were alone in the bedroom with the door locked. She said that defendant told her to wear shorts so that it would be easier to pull her pants off. AG also stated that defendant put his hands down her paints [sic] while in the car. AG claimed that defendant touched her private parts every time he visited. JV said that defendant touched her private parts "many times."
>
> Defendant was convicted of one count of CSC-II against AG and one count of CSC-II against JV. The jury found defendant not guilty of a

2

third count of CSC-II against AG's sister, and of two counts of first-degree CSC against AG and JV respectively.

*People v. Quezada*, No. 342656, 2019 WL 3315178, at *1 (Mich. Ct. App. July 23, 2019).

Petitioner filed a direct appeal by right. He challenged the trial court's imposition of the ten- to fifteen-year sentence as disproportionate, because his minimum sentence guideline range under the Michigan sentencing scheme was calculated to be 36 to 71 months (three years to five years, eleven months). *Id.* at *2. The court of appeals disagreed with Petitioner's argument that the guidelines scoring system adequately accounted for his conduct, and found that the trial court had not abused its discretion. *Id.* The Michigan Supreme Court denied leave to appeal in a standard form order. *People v. Quezada*, 505 Mich. 982 (2020).

Petitioner returned to the trial court with a motion for relief from judgment. He argued he was denied a fair trial when a detective was allowed to vouch for the victims' credibility; that trial counsel was ineffective for failing to subpoena Petitioner's girlfriend, who could have supported Petitioner's credibility by testifying to harassment by AG's mother; that the trial court erred by excluding evidence of a television show which might have been the basis for the victims' allegations against Petitioner; and that appellate counsel was ineffective for failing to raise these issues. (Mot., ECF No. 9-12, PageID.536, 542, 545, 548.) The trial court denied Petitioner's motion because he had not met the standard for relief

3

required by Michigan's rules governing post-conviction motions. (*Id.* at PageID.528.) It also found his claims to be meritless. (*Id.* at PageID.529.) Both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave to appeal the trial court's order. *People v. Quezada*, No. 356010 (Mich. Ct. App. March 12, 2021); *People v. Quezada*, 508 Mich. 953 (2021).

Petitioner then filed this timely application for a writ of habeas corpus. In it, he raises the following issues:

I.   Defendant's rights to due process and protections against double jeopardy were violated when the trial court fashioned a sentence by stating as a reason for departure (1) elements accounted for in the sentencing guidelines and (2) necessary elements of the offense for which Petitioner[er] was convicted.

II.  Petitioner's rights to due process were violated when a police officer was allowed to vouch for the credibility [of] the victims and state an opinion as to whether or not sexual assault occurred.

III. Petitioner's due process right to present a defense was unconstitutionally infringed upon when the trial court refused to admit a video clip as rebuttal to prosecution's theory concerning the veracity of the victim's testimony.

IV.  Petitioner's appellate counsel was ineffective for failing to raise Grounds II and III on direct appeal.

(Pet., ECF No. 1, PageID.5-8.)

Respondent argues that Petitioner failed to exhaust the double jeopardy challenge to his sentence. He also contends that Petitioner procedurally defaulted that argument as well as Grounds II and III by failing to raise the claims on direct appeal. Finally, Respondent argues Petitioner's claims are meritless.

4

## II. Standard of Review

This habeas petition is reviewed under the standards of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214

(Apr. 24, 1996). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law "if

the state court arrives at a conclusion opposite to that reached by [the Supreme

Court] on a question of law"; or if "the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme Court] and . . . arrives

at a result opposite to [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 404–05

(2000). An "unreasonable application" occurs when "a state-court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's

case[.]" *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *accord*, *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (habeas relief should be denied if it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.) Therefore, to obtain habeas relief in federal court, state prisoners must show that the state court's rejection of their claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Where the state court decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate that "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its decision, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts

6

should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, when the last state court to act does not explain its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and apply *Ylst*'s presumption. *Id*. The "look through" rule applies whether the last reasoned state court opinion based its ruling on procedural default, *id*. at 1194 (citing *Ylst*, 501 U.S. at 803), or ruled on the merits. *Id*. at 1195 (citing *Premo v. Moore*, 562 U.S. 115, 123–133 (2011)) (other citation omitted).

## III.   Discussion

The appellate court decisions denying leave to appeal the trial court's dismissal of Petitioner's motion for post-conviction relief were issued as standard form orders which do not provide the courts' reasoning for their orders. Accordingly, the Court will apply *Wilson*'s presumption and "look through" those orders to the trial court's order to understand the state courts' rationale. *Wilson, supra.*

As to Respondent's argument that Petitioner has procedurally defaulted a number of his claims of error, the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir.), *reh'g denied* (July 1, 2020), *cert. denied*,

7

141 S. Ct. 634 (2020) (citing *Day v. McDonough*, 547 U.S. 198, 205 (2006); *Trest v. Cain*, 522 U.S. 87, 89 (1997)). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits[.]" *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

**A. Petitioner's challenges to his sentence**

Petitioner claims that his sentence is disproportionate, and that his rights to due process and protections against double jeopardy were violated when the trial court's sentence was based on facts accounted for in the Michigan sentencing guidelines as well as necessary elements of the offenses of which he was convicted. (Pet., ECF No. 1, PageID.28.) Respondent argues that Petitioner failed to exhaust the double jeopardy issue by not raising this theory in the state courts, and that it is accordingly procedurally defaulted. He also argues the claim is without merit. (Resp., ECF No. 8, PageID.197.)

Petitioner argues first and at great length against the trial court's application of the Michigan offense variables under the state sentencing scheme, especially whether the variables adequately accounted for the number of times Petitioner was alleged to have molested the girls, and whether his actions caused psychological injury to the victims' families. (Pet., ECF No. 1, PageID.34-40.) However, it is "not

the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is limited to a determination whether a conviction (or sentence) violates the Constitution, laws, or treaties of the United States. *Id.*; *see also* 28 U.S.C. §§ 2241(c)(3), 2253(c)(2).

As a result, a claim the trial court violated state law when it sentenced a petitioner is not cognizable in habeas corpus proceedings. *Baker v. Barrett*, 16 F. Supp. 3d 815, 837 (E.D. Mich. 2014) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987)). This includes challenges, like Petitioner's, which are based on a state trial court's departure from the sentencing guidelines range. *Id.* (citing *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (other citations omitted). Such claims are not cognizable in habeas, as they implicate "state law and procedure . . . [but not] federal constitutional protections." *Cook*, 56 F. Supp. 2d. at 797 (citing *Estelle*, *supra*); *see also Baker*, 16 F. Supp. 3d at 837.

Next, Petitioner asserts that the trial court infringed on his protections against Double Jeopardy when it considered conduct and circumstances addressed both by the Michigan sentencing variables and the elements of his offense in setting the terms of his sentence. "[T]he Double Jeopardy Clause provides three basic protections: It 'protects against a second prosecution for the same offense after acquittal. It protects

against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense' imposed in a single trial." *Reeves v. Stoddard*, 798 F. App'x 865, 867 (6th Cir. 2020) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)); *see also Jackson v. Smith*, 745 F.3d 206, 210–11 (6th Cir. 2014). To determine whether multiple punishments violate double jeopardy protections, courts must look to the "state legislature's intent concerning punishment" because in this context, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Jackson*, 745 F.3d at 211 (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

Petitioner cannot establish a double jeopardy claim. His challenge to his sentence is based on the overlap or double counting between the state offense variables, such as those which address victim vulnerability and multiple offenses, and the elements of the crimes of which he has been convicted. But Michigan courts expressly disagree with Petitioner's argument, holding that "courts may consider conduct inherent in a crime when scoring offense variables . . . . [and] 'the Sentencing Guidelines allow a factor that is an element of the crime charged to also be considered when computing an offense variable score.'" *People v. Hardy*, 494 Mich. 430, 442 (2013) (quoting *People v. Gibson*, 219 Mich. App. 530, 534 (1996)). The Court must defer to his precedent, because state court interpretations of  the

10

legislature's intent are binding on federal habeas courts. *White v. Howes*, 586 F.3d 1025, 1029 (6th Cir. 2009) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

Petitioner finally challenges his sentence as disproportionate, but generally, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Neither apply to Petitioner's sentence. Moreover, the United States Constitution does not require strict proportionality between a crime and its punishment. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Id.*; *see also Lockyer*, 538 U.S. at 77 ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case"); *Ewing v. California*, 538 U.S. 11, 36 (2003).

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Nor is such a sentence subject to appellate or habeas review. *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (citation omitted); *Cook*, 56 F. Supp. 2d 797. The challenged sentence "will not [be] set aside on allegations of

unfairness or an abuse of discretion . . . unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking." *Doyle*, 347 F. Supp. 2d at 485. In fact, "federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute." *Id*. (citing *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *Allen v. Stovall*, 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001)). Petitioner's ten-to-fifteen-year sentence is within the fifteen-year maximum set by statute for second-degree criminal sexual conduct. *See* MICH. COMP. LAWS § 750.520c(2)(a).

None of Petitioner's challenges to his sentence have merit. Petitioner's sentence is not disproportionate. The scoring of Petitioner's minimum guideline range did not offend Double Jeopardy. Petitioner is not entitled to habeas relief on this issue.

## B. Challenge to witness vouching for victims' credibility

Petitioner next argues his due process rights were violated by the admission of testimony by a police detective who vouched for the victims' credibility and opined whether a sexual assault occurred. Petitioner does not cite to the record, but refers to the "introduc[tion of] testimony concerning late disclosures in cases unrelated to the case at bar." (Pet., ECF No. 1, PageID.46.)

Again, federal habeas courts may not interfere with state court decisions on state law questions. *Estelle*, 502 U.S. at 67-68. Errors in the application of state law,

including rulings regarding the admissibility of evidence under state rules of evidence, are generally not cognizable in a federal habeas proceeding. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *accord*, *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citation omitted). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (quoting *Seymour*, 224 F.3d at 552). "If a ruling is especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Id*. at 475 (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Id*. at 476.

Petitioner does not cite the record, and the Court is not obligated to develop Petitioner's argument. *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). However, it appears Petitioner is relying on the prosecutor's question to witness Det. Stephen Wiersma as to whether child victims more commonly disclose sexual abuse immediately or on a delayed basis. (*See* ECF No. 1, PageID.46; Trial Tr., 1/11/18, ECF No. 9-7, PageID.403.) The related record shows the admission of the challenged testimony was neither "egregious" nor a denial of fundamental fairness.

First, the trial court sustained most of defense counsel's objections to this line of questioning. (*See*, *e.g.*, ECF No. 9-7 at PageID.405, 408.) Defense counsel then asked Det. Wiersma essentially the same questions to which Petitioner now objects, regarding the number of cases in which Wiersma observed sexual abuse was reported after delays of a year or two years or more. (*Id.* at PageID.404.)

In addition, "[w]hether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)). While Det. Wiersma's testimony may have supported the victims' veracity, the frequency at which sexual abuse victims delay reporting the offense is not a crucial or highly significant factor in the evidence against Petitioner. In addition, it is difficult to conclude that some deeply rooted and fundamental principle of justice was offended when defense counsel asked the witness the same questions Petitioner is now challenging.

The record does not support Petitioner's claim that his right to a fair trial was denied. Again, this is an evidentiary issue implicating state rules, and it is thus non-cognizable in habeas. Petitioner is not entitled to habeas relief on this issue.

14

## C. Challenge to the trial court's exclusion of video evidence

Petitioner next argues his due process right to present a defense was infringed upon by the exclusion of video evidence which would have advanced his theory that the victims' testimony was based on sexual knowledge they learned from a televised Spanish language soap opera he asserts they regularly watched. "A fair opportunity to present a defense is a constitutional right." *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). However, the right is not absolute. *Id.* States may promulgate evidentiary rules as long as they are not arbitrary or disproportionate to their purposes, and the Constitution permits judges to exercise "'wide latitude' to exclude evidence that is only 'marginally relevant.'" *Id.* at 324 (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane*, 476 U.S. at 689).

Again, the admission or exclusion of evidence is a state-law issue that is non-cognizable on habeas review short of a denial of fundamental fairness or due process. *Seymour*, 224 F.3d at 552 (6th Cir. 2000); *Wilson*, 874 F.3d at 475–76 (6th Cir. 2017). But even if it were cognizable, Petitioner cannot establish he was denied his right to present his theory that the victims gained sexual knowledge from the television shows and not through his purported grooming of them. Petitioner admits in the brief accompanying his petition that there was "conflicting testimon[y]" whether the victims had watched the soap opera, including its "nasty parts." (Pet.,

ECF No. 1, PageID.49.) He also acknowledges the "[d]efense was able to introduce evidence concerning the shows through testimony and cross-examination . . ." (*Id.* at PageID.51.)

Accordingly, Petitioner was not denied his right to present a defense. Nor was he denied due process or a fair trial by the exclusion of the video testimony. Petitioner is not entitled to habeas relief on this issue.

**D. Ineffective assistance of appellate counsel**

Finally, Petitioner argues his appellate attorney was constitutionally ineffective for failing to raise issues II and III in his direct appeal. Citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984), but without elaboration, the trial court found that Petitioner had failed to establish appellate counsel's performance "fell below an objective standard of reasonableness" or "a reasonable probability that . . . the result of the proceeding would have been different" absent the attorney's substandard performance. (ECF No. 9-12, PageID.528.)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the effective assistance of counsel. To establish a claim of ineffective assistance, a habeas petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688; *accord*, *Wiggins*, 539 U.S. at 521

16

("[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.") "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694). Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

In habeas cases, the Court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). In addition to the *Strickland* analysis, courts applying AEDPA must ask "whether the state court was reasonable in its determination that counsel's performance was adequate." *Id.* (citing *Burt*, 571 U.S. at 15). To prevail on an ineffective assistance claim, a habeas petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

These standards apply equally to claims of ineffective assistance of appellate counsel. *Blackston v. Rapelje*, 907 F. Supp. 2d 878, 903 (E.D. Mich. 2012) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). To establish ineffective assistance of appellate counsel, a petitioner must show that "appellate counsel made an

objectively unreasonable decision by choosing to raise other issues instead of [the challenged issue], meaning that issue 'was clearly stronger than issues that counsel did present.'" *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)). Appellate attorneys are not required to raise every possible "colorable" claim. *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). And a lawyer will not be found ineffective for failing to advance a futile or meritless argument. *Downs v. United States*, 879 F.3d 688, 691 (6th Cir. 2018); *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017).

On direct appeal, Petitioner's appellate attorney raised only a challenge to his sentence. Petitioner argues the attorney was ineffective for failing to raise the evidentiary issues raised on collateral review and in his habeas petition. But Michigan appellate courts will not disturb a trial court's evidentiary decisions unless the court abused its discretion, which requires finding the decision to "fall 'outside the range of principled outcomes." *People v. Feezel*, 486 Mich. 184, 192 (2010) (citing *People v. McDaniel*, 469 Mich. 409, 412 (2003); *People v. Smith*, 482 Mich. 292, 300, 754 N.W.2d 284 (2008)); *see also Crane*, 476 U.S. at 689-90 (trial judges enjoy "wide latitude" in ruling on admissibility of evidence); *Baez*, 371 F.3d at 324 (same); *Wilson v. Sheldon*, 874 F.3d at 476. For the reasons stated above, coupled with the broad discretion vested in the trial court, Petitioner's evidentiary issues were

18

not likely to be successful and thus were not "clearly stronger" than the sentencing issue.

Petitioner's appellate attorney's performance was not deficient. Petitioner is not entitled to habeas relief on this issue.

## E. Petitioner's motion to appoint counsel

In support of his request for the appointment of counsel, Petitioner argues that the issues in the case are complex, and that he "has failed to adequately understand or grasp basic issues identified by previous counsel(s) in this case." (ECF No. 3, PageID.159.) Petitioner has no knowledge of the law, and has relied on prison legal writing assistance for his habeas petition and related motions. (*Id.* at PageID.160.) He also asserts that he "does not read or understand the English Language," and that it is impossible for him to litigate his habeas case "without the assistance of bilingual Counsel." (*Id.* at PageID.161.)

"[T]here is no constitutional right to counsel in habeas proceedings." *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991)). The decision to appoint counsel for a federal habeas petitioner is discretionary and appointment is appropriate only when the interests of justice or due process so require. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). The appointment of counsel is required "only 'if, given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, [he]

could not obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side.'" *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002) (citing *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997)); *see also Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (courts should consider "the type of case and the ability of the plaintiff to represent himself" in determining whether to appoint counsel in civil matters). Appointment of counsel in a habeas proceeding is mandatory only if the district court determines that an evidentiary hearing is required; if not, appointment is discretionary. *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004); *see also* Rules Governing § 2254 Cases, Rule 8(c).

Here, Petitioner appears to have been ably represented in his habeas petition and accompanying brief by the prison legal writers mentioned in his motion. His habeas claims have been presented in a clear and logical manner with references to case law, including the correct habeas standards, and citations to the record. However, even with counsel, Petitioner could not prevail on his claims for habeas relief, because he has not shown he is being held in violation of his constitutional rights. Nor is Petitioner entitled to an evidentiary hearing, because no additional fact-finding is necessary nor were the state court's factual determinations unreasonable. *Stermer v. Warren,* 959 F.3d 704, 721 (6th Cir. 2020) (citations omitted). For those reasons, the appointment of counsel would be futile and would not serve the interest

20

of justice. Therefore, the motion for appointment of counsel (ECF No. 3) will be denied.

## F.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## IV.  Order

Based on the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Petitioner's motion for appointment of counsel (ECF No. 3) is **DENIED**; and that Respondent's motion to extend time (ECF No. 6) is **DENIED AS MOOT**.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

SO ORDERED.

Dated:  March 8, 2023                                    /s/Gershwin A. Drain
                                                         GERSHWIN A. DRAIN
                                                         United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 8, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk